# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAENG SEECHAN, | ) | 1:07-cv-01380 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Saeng Seechan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

///

///

---

[1]The parties consented to the jurisdiction of the United States Magistrate Judge. On January 31, 2008, the Honorable Oliver W. Wanger reassigned the case to the Honorable Gary S. Austin for all purposes. On December 24, 2008, the case was reassigned to the undersigned.

**FACTS AND PRIOR PROCEEDINGS[2]**

On August 30, 2004, Plaintiff filed an application for SSI benefits. AR 65-67. He alleged disability since March 25, 2004, due to migraines, neck and back pain, respiratory distress, deafness in left ear, dizziness, weakness, vertigo, fainting spells, depression and insomnia. AR 65, 76-83. After being denied both initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 28, 35, 41-45, 48-53, 57-58. On December 29, 2006, ALJ Stephen Webster held a hearing. AR 330-346. ALJ Webster denied benefits on February 21, 2007. AR 11-22. On July 21, 2007, the Appeals Council denied Plaintiff's request for review. AR 5-7, 8.

Hearing Testimony

On December 29, 2006, ALJ Webster held a hearing in Fresno, California. AR 330-346. Plaintiff appeared with his attorney, Robert Christensen, and an interpreter. AR 332. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 332, 344-46.

In response to questions from the ALJ, Plaintiff testified that he is right handed, is married and has seven children. AR 334. He lives in a three-bedroom apartment with his son and his wife. AR 334, 344. At one time, he had a driver's license. AR 334.

Plaintiff testified that his son helps him shower, shave and get dressed by telling him what to do. AR 334-35. Plaintiff does not help with work around the house, such as laundry, cooking or dishes. AR 335. He does not do any work in the yard or the garden. AR 335. He does not watch TV. AR 335. He does not visit with friends, go to the movies or go to church or temple. AR 335. He does not read, write or speak English. AR 335. He reads or writes a little bit in "Lahua." AR 335. He has not worked for pay since August 2004. AR 336.

Plaintiff testified that he sometimes has back pain. AR 336. He has depression and trouble sleeping. AR 336. He has nightmares and hears voices. AR 336. He has problems sitting. AR 336. He sits "for a while and then pain." AR 336.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    In response to questions from his legal counsel, Plaintiff testified that he worked in the
2 past, but forgot the things that he had done. AR 337. In his work checking a mailbox, he had to
3 lift a box. AR 337, 338. He probably lifted about 50 pounds when he was healthy. AR 338. He
4 does not remember his glass repair work. AR 338. He probably repaired car glass in Colorado.
5 AR 339. In his production worker job, he "put things in a little machine." AR 339. He probably
6 made door knobs and hinges. AR 339.

7    Plaintiff testified that he goes to mental health because he feels depressed, has trouble
8 sleeping and has nightmares. AR 342. He hears voices. AR 342. He also has difficulty
9 concentrating and paying attention to things. AR 342. His medication makes a "little difference"
10 AR 342.

11    Plaintiff testified that he also has dizziness. AR 343. He has blackouts and falls. AR
12 343. He gets between three and six blackouts a month. AR 343. When he wakes up, he lies on
13 the bed. AR 343. The blackouts can happen any time. AR 343. He is getting worse. AR 344.

14    VE Cheryl Chandler also testified. AR 344. She reported that Plaintiff did not have any
15 skills that would transfer to other work. AR 344.

16    For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
17 education and work history. AR 344. This person also had no exertional or postural limitations,
18 but due to dizziness should not work at heights or around dangerous machinery and should not
19 drive. AR 344. The VE testified that Plaintiff's past relevant work as a mail box checker would
20 fit within the hypothetical. AR 345.

21    For the second hypothetical, the ALJ asked the VE to assume the same factors as in the
22 first hypothetical. AR 345. This person would not be able to sustain focused attention and
23 concentration long enough to complete routine work-related tasks in a timely and appropriate
24 way. AR 345. The VE testified that such a person could not do any of the Plaintiff's past
25 relevant work or any other work in the regional or national economy. AR 345.

Medical Evidence

On February 23, 2003, Plaintiff sought emergency treatment at Tulare District Hospital for complaints of brief episodes of dizziness. AR 211-14. He was diagnosed with dizziness, lightheadedness and bronchitis. AR 213.

On September 18, 2003, Plaintiff sought emergency department services at Kaweah Delta Health Care District following a motor vehicle accident. AR 146-155. Plaintiff was diagnosed with cervical strain and a contusion to the left chest wall. AR 147, 151.

On December 30, 2003, Plaintiff sought emergency treatment at Tulare District Hospital for complaints of dizziness and a fast heartbeat. AR 203-04. On physical examination, Plaintiff had an irregular rhythm. AR 205. He was diagnosed with premature atrial contractions. AR 206.

On February 2, 2004, Plaintiff sought treatment from Harish Shah, M.D., at the Hillman Health Clinic. AR 244-45. Plaintiff reported a history of dizziness and blackouts. AR 244. Dr. Shah reported a doubtful history of loss of consciousness. AR 244. Plaintiff had no history of headaches, vomiting, weakness, difficulty reading or writing, difficulty seeing long distance, tinnitus, bladder or bowel problems, seizures, chest pains, shortness of breath, wheezing, fever, cough or abdominal pain. AR 244. Dr. Shah assessed Plaintiff with dizziness and recommended an MRI and an EEG, along with other testing. AR 244. Plaintiff was prescribed Antivert for dizziness. AR 245.

A chest x-ray on February 3, 2004, revealed no active pulmonary disease. AR 246.

An EEG on February 17, 2004, was normal. AR 200. An MRI revealed acute sinusitis changes in the left maxillary antrum and minimal ethmoid disease, but was otherwise negative. AR 201. A cardiac echo doppler study on February 20, 2004, showed no significant heart disease except for mild mitral, tricuspid and pulmonic regurgitation. AR 202.

On March 31, 2004, Plaintiff saw Wilbur Suesberry, M.D., in the ENT clinic. AR 241. Plaintiff complained of dizziness for two years. AR 241. Dr. Suesberry diagnosed Plaintiff with vertigo of an undetermined etiology. AR 241. Dr. Suesberry opined that he was "not certain [Plaintiff] truly has vertigo because he states that at times when he's sitting down he gets a

sensation of movement and suddenly blanks out for two to three minutes." AR 241. Dr. Suesberry recommended that Plaintiff continue taking Antivert. AR 241.

On April 21, 2004, Plaintiff saw Truc Nguyen, M.D., at Hillman Health Care Center. AR 240. Plaintiff reportedly was still dizzy, but better. AR 240. Dr. Nguyen assessed Plaintiff with "[d]izziness, improved" and a history of precordia. AR 240. Plaintiff was to continue taking meclizine. AR 240.

On July 27, 2004, Plaintiff again saw Dr. Nguyen for complaints of dizziness. AR 238. Dr. Nguyen opined that Plaintiff's dizziness seemed improved. AR 238. An x-ray suggested sinusitis. AR 237.

On September 13, 2004, Plaintiff sought treatment from Dr. Nguyen for complaints of dizziness. AR 235. Dr. Nguyen opined that they could not "find any obvious cause for his dizziness." AR 235.

A September 14, 2004, cervical spine x-ray was normal. AR 234.

On October 3, 2004, Plaintiff sought emergency room treatment. AR 192. He complained of falling down, blacking out 3 or 4 times and dizziness. AR 192. Plaintiff was diagnosed with vertigo and given meclizine. AR 195.

An October 12, 2004, bilateral carotid ultrasound examination revealed no areas of plaquing and no areas of stenosis. AR 232.

A November 3, 2004, air-contrast barium enema revealed no obvious nonmovable mass. AR 189.

On November 9, 2004, Zaky Moussa, M.D., a Diplomate of the American Board of Internal Medicine, completed a consultative internal medicine evaluation of Plaintiff. AR 156-59. Plaintiff reported that he did not "feel well." AR 156. He complained of dizziness and fainting, falling, neck pain, lower back pain and insomnia. AR 156.

On physical examination, Plaintiff had no abnormalities or productive vertigo with changing positions. AR 157. His range of motion in his spine and back were within normal limits, as were his shoulders, elbows, wrists, hands, hips, knees and ankles. AR 158. On mental status examination, Plaintiff was alert and oriented, his speech was normal and his memory was

1  intact.  AR 158.  Plaintiff's coordination, gait and station were within normal limits.  AR 158.
2  On sensory examination, he had no deficits.  AR 159.  Dr. Moussa concluded that Plaintiff had
3  "[e]xaggerated symptoms of benign paroxysmal positional vertigo."  AR 159.  He opined that
4  Plaintiff was "able to work full time with normal breaks," but needed to avoid operating
5  machinery or driving due to his vertigo symptoms.  AR 159.

6  A November 17, 2004, air contrast upper GI revealed a small, easily reducible hiatus
7  hernia, components of duodenitis and a small 1 to 2 mm ulcer.  AR 188.

8  On November 24, 2004, Michael S. Barnett, M.D., a board certified psychiatrist,
9  conducted a consultative psychiatric evaluation of Plaintiff.  AR 162-164.  An interpreter assisted
10 with the interview.  AR 162.  Plaintiff chiefly complained of depression for two years.  AR 162.
11 He reported seeing a lot of shooting and blood in Laos and having nightmares three or four times
12 per week.  AR 162.  He also reported difficulty falling and staying asleep, low energy and poor
13 concentration.  AR 162.  "'People' suggested that he apply for SSD."  AR 162.

14 On mental status examination, Plaintiff's responses were relevant, coherent and
15 organized.  AR 163.  His mood was depressed and his affect was blunted.  AR 163.  He could not
16 list any of California's geographical neighbors, could not describe the similarity and difference
17 between an apple and an orange, could not interpret the meanings of two simple and common
18 proverbs and did not know what he would do if he was in a movie theater and a fire broke out or
19 if he found a stamped, addressed letter on the sidewalk.  AR 163.

20 Dr. Barnett determined that Plaintiff had "chronic depression, dysthmia and PTSD,
21 hallmarked by his lack of education and work history and poor adaptation to living in the U.S."
22 AR 163.  He assigned Plaintiff a Global Assessment of Functioning ("GAF") of 51.  He also
23 opined that Plaintiff had psychiatric symptoms that would interfere with his ability to do work-
24 related tasks in an eight-hour work situation.  AR 163.  Plaintiff would not be able to understand
25 and remember simple or complex work-related instructions and tasks, would not be able to
26 sustain focused attention and concentration long enough to complete routine work-related tasks
27 in a timely and appropriate way and would not be able to interact independently, appropriately
28 and effectively with coworkers, supervisors and the public.  AR 163.  He would need special or

additional supervision and could not adapt to changes, hazards or stressors in the work environment. AR 163. Dr. Barnett further opined that Plaintiff's prognosis was poor. AR 164.

On December 3, 2004, Plaintiff saw Dr. Nguyen with complaints of dizziness. AR 230. Dr. Nguyen opined that it was very hard to explain Plaintiff's dizziness as there was no obvious cardiac or vascular cause. AR 230.

On December 21, 2004, state agency physicians, Evangeline Murillo, M.D., and Brian Ginsburg, M.D., completed a Psychiatric Review Technique form. AR 166-179. Drs. Murillo and Ginsburg determined that Plaintiff had dysthmia, a medically determinable impairment that did not precisely satisfy the diagnostic criteria of an affective disorder, and PTSD, a medically determinable impairment that did not precisely satisfy the diagnostic criteria of an anxiety-related disorder. AR 169. Drs. Murillo and Ginsburg opined that Plaintiff's affective disorder was not severe. AR 166. On July 25, 2005, state agency psychiatrist, Archimedes Garcia, M.D., reviewed and affirmed the opinion of Drs. Murillo and Ginsburg. AR 166.

On January 24, 2005, Plaintiff sought treatment from Dr. Nguyen for complaints of pain to the back of the chest and fluttering in the precordium area. AR 227. Plaintiff also reported "dizziness on and off." AR 227. Dr. Nguyen assessed Plaintiff with chronic dizziness and a lump on the back of his neck. AR 227. Dr. Nguyen also opined that Plaintiff might have mild bradycardia on some occasion. AR 227.

On February 7, 2005, Roger Ching-Fong Wu, D.O., completed an examination of Plaintiff in the GI Clinic of the Visalia Health Care Center. AR 224-25. Plaintiff reported doing well and complained only of back pain. AR 224. A barium enema study, upper GI and small-bowel follow-through were essentially unremarkable. AR 224. Dr. Wu assessed Plaintiff with dizziness and vertigo. AR 224.

On March 24, 2005, Plaintiff received follow-up treatment from Dr. Nguyen. AR 222. Plaintiff complained of "worse hearing" on the left side and bouts of dizziness. AR 222. An echocardiogram was normal and a GI workup revealed only a small ulcer of the duodenum. AR 222. Dr. Nguyen assessed Plaintiff with dizziness, possible mid ear syndrome with decreased hearing and dizziness. AR 222.

On April 14, 2005, Plaintiff saw Dr. Nguyen for complaints of two "black-out spells" on March 30 and April 2, 2005. AR 221. Plaintiff reported that when he looks up, especially with his head turned to the left side, syncope occurs in a sudden manner. AR 221. On examination, Plaintiff's blood pressure was 110/90 in his right arm while sitting and 95/80 when he looked up. AR 221. Dr. Nguyen assessed Plaintiff with a weak, left, radial pulse. AR 221. He also developed syncope when looking up and had a weakness of the brachial pulse. AR 221.

On May 24, 2005, Plaintiff received treatment from Dr. Nguyen. AR 220. Plaintiff reported blackouts on April 29 and 30, 2005. AR 220. He also complained of pain in his neck. AR 220. Dr. Nguyen assessed Plaintiff with near syncope episodes, especially with neck motion to the left side. AR 273. He was prescribed ibuprofen and continued use of Meclizine. AR 220, 273.

On July 14, 2005, state agency neurologist, Durell D. Sharbaugh, M.D., and another state agency physician completed a Physical Residual Functional Capacity Assessment form. AR 252-59. The state agency physicians opined that Plaintiff had no exertional limitations. AR 253. He occasionally could climb a ramp/stairs, but never could climb a ladder/rope/scaffold. AR 254. One physician opined that Plaintiff occasionally could reach overhead due to dizziness with neck extension. AR 255. Plaintiff had no visual or communicative limitations. AR 255-56. He should avoid concentrated exposure to hazards, such as machinery and heights. AR 256.

On August 3, 2005, Plaintiff reported two episodes of black out spells to Dr. Nguyen. AR 269. A CAT scan of the brain failed to reveal any pathology. AR 269. Plaintiff was referred for an angiogram related to a weak radial pulse on the right side. AR 269.

On September 28, 2005, Plaintiff saw Dr. Nguyen in follow-up of his angiogram. AR 267. Dr. Nguyen reported that the neurovascular workup showed no indication of any ischemia. AR 267. Dr. Nguyen indicated that they could not "explain the occasion of his dizziness and near fainting." AR 267. Plaintiff admitted that he had been under a great deal of stress with work and family situations. AR 267.

On December 1, 2005, Plaintiff saw Dr. Nguyen for complaints of dizziness and bouts of near fainting. AR 266. Plaintiff claimed it could be related to his depression. AR 266. Dr.

1 Nguyen opined that Plaintiff had undergone a complete neural vascular workup and there was no
2 indication of any obvious origin for his complaints of dizziness and near fainting. AR 266. The
3 cardiovascular workup was essentially negative with the exception of a mild degree of stenosis of
4 the right brachial artery. AR 266. Plaintiff was to continue with Mobic for neck pain, meclizine,
5 Elavil and Zoloft. AR 266. He was referred to ENT and Mental Health. AR 266. Dr. Nguyen
6 advised Plaintiff that his symptoms of dizziness and near fainting most likely would be improved
7 if he adhered to regular mental health visits and followed through with counseling. AR 266.

8 On January 30, 2006, Plaintiff saw Dr. Nguyen. AR 265. Dr. Nguyen opined that
9 Plaintiff was very depressed and diagnosed him with anxiety/depression, chronic dizziness and
10 possible ascites or early peptic ulcer symptoms. AR 265. Plaintiff was to continue with
11 meclizine, Elavil and sulindac for back pain. AR 265.

12 On February 13, 2006, Tulare County Mental Health Services completed an intake
13 evaluation of Plaintiff. AR 315-322. On mental status examination, Plaintiff avoided eye
14 contact and was resistant and distracted. AR 319. He had a depressed mood. AR 320. Plaintiff
15 was diagnosed with posttraumatic stress disorder and a rule out of major depressive disorder was
16 considered. AR 321.

17 On June 26, 2006, Ina Shalts, M.D., of the Tulare Adult Clinic, completed a psychiatric
18 evaluation of Plaintiff. AR 297-99. Plaintiff complained of pain, bad dreams and depression.
19 AR 297. On mental status examination, Plaintiff was depressed. AR 298. He had slow speech
20 and some motor retardation. AR 298. He had low energy and low motivation. AR 298. He felt
21 hopeless. AR 298. He had bad dreams and anxiety. AR 298. He heard voices off and on. AR
22 298. His affect was flat and his insight and judgment were limited. AR 298. He had poor
23 concentration. AR 298. He was exposed to war in Laos. AR 298.

24 Dr. Shalts diagnosed Plaintiff with major depressive disorder, recurrent, severe, with
25 psychotic features and rule out posttraumatic stress disorder. AR 298. Dr. Shalts assigned
26 Plaintiff a Global Assessment of Functioning ("GAF") of 45 to 50. AR 298. She prescribed
27 Zoloft for anxiety, depression and symptoms of Posttraumatic Stress Disorder. AR 298. She also
28 prescribed Seroquel for nightmares, to help with sleeping and to help with voices. AR 299.

Thereafter, Plaintiff was seen in counseling. In October 2006, he reported feeling slightly better with a medication adjustment. AR 275-76.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 16. The ALJ found that Plaintiff had the severe impairment of dizziness and non-severe impairments of depression and post-traumatic stress disorder. AR 16. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16. The ALJ further found that Plaintiff had the residual functional capacity for a full range of work limited only by a need to avoid working around heights, machinery or driving. AR 16. The ALJ concluded that Plaintiff was capable of performing past relevant work as a mail checker. AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2006). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (dizziness) based on the requirements in the Regulations (20 C.F.R. § 416.920(c) (2006)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; and (4) is able to perform his past relevant work as a mail checker.

In this case, Plaintiff argues that the ALJ erred by: (1) improperly rejecting the treating and examining physician opinions; (2) improperly finding his mental impairments non-severe; (3) failing to find him credible; and (4) failing to explain the rejection of lay witness testimony.

**DISCUSSION**

A.  Physician Opinions

  1.  Consultative Examiner–Dr. Barnett

Plaintiff argues that the ALJ improperly rejected the opinion of the consultative examiner, Dr. Barnett, in favor of the state agency physician, Dr. Ginsburg. The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v.*

11

*Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

Here, the ALJ gave less weight to the opinion of Dr. Barnett because he found that Plaintiff lacked credibility and the medical record lacked evidence to corroborate Plaintiff's allegations of depression for two years prior to November 2004. AR 21. The ALJ found most significant Plaintiff's report that "people" suggested he apply for SSI. AR 21. For these reasons, the ALJ gave "greater weight" to the opinion of the non-examining state agency physician, Dr. Ginsburg. AR 21. The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1454.

While the ALJ is entitled to reject the consultative examiner's opinion in favor of a non-examining state agency physician, his decision to do so here was improper. Dr. Barnett's consultative examination was performed in November 2004. AR 162. Thereafter, Dr. Ginsburg, the state agency physician, completed his assessment on December 21, 2004. AR 166-179. As the Plaintiff points out, the ALJ did not acknowledge subsequent treatment records corroborating Dr. Barnett's opinion. No later than September 2005, Plaintiff reported to Dr. Nguyen that he had been under a great deal of stress with work and family situations. AR 267. Dr. Nguyen prescribed him Zoloft. AR 267. Dr. Nguyen continued to treat Plaintiff for depression and referred him to Mental Health. AR 265, 266. In February 2006, Plaintiff sought treatment from Tulare County Mental Health Services. AR 315-322. He was diagnosed with post-traumatic stress disorder and rule out major depressive disorder. AR 321. In June 2006, Dr. Shalts completed a psychiatric evaluation and diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features and rule out post-traumatic stress disorder. AR 298. Plaintiff underwent counseling at Tulare County Mental Health between February and October

2006. AR 274-282, 284-296, 300-314. These subsequent medical and treatment records support Plaintiff's allegations of depression and essentially undermine the determination of the state agency physician made in 2004. In short, the ALJ rejected strong evidence in the medical record in favor of the non-treating, non-examining physician.

It appears from the record that the ALJ based his opinion largely on Plaintiff's credibility without regard to the objective medical evidence, which suggests an affirmative effort on his part to interpret the evidence so as to deny benefits. Although the ALJ may make findings concerning the credibility of the witness, he "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." *Gallant*, 753 F.2d at 1456. Therefore, the ALJ's rejection of Dr. Barnett's opinion is not supported by substantial evidence.

        2.        Treating Physician–Dr. Shalts

Plaintiff next contends that the ALJ erred in his rejection of Dr. Shalts' opinion and that more weight should be given to the opinion of a treating source. The medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey*, 849 F.2d at 421-22.

Here, the ALJ essentially accorded less weight to Dr. Shalts' opinion based on Plaintiff's credibility. AR 21. However, the ALJ improperly ignored competent medical evidence. Indeed, the ALJ does not identify any conflicting clinical evidence to undermine Dr. Shalts' diagnoses of depression and post-traumatic stress disorder. Dr. Shalts' opinion was consistent with the record

as a whole, including the opinion of Dr. Barnett and the treatment records of Dr. Nguyen. Further, there was no positive evidence that Plaintiff was not suffering from depression and no psychiatric examiner expressed the opinion that Plaintiff was in any way malingering. The ALJ's decision is not supported by substantial evidence and this action should be remanded.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court has determined that the ALJ's reliance on Dr. Ginsburg's opinion was not supported by substantial evidence. The Court also found that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in rejecting the opinions of Drs. Barnett and Shalts. In so finding, however, the Court is not necessarily endorsing Dr. Barnett's limitations. On remand, the ALJ should obtain another consultative examination. The ALJ also should consider requesting a functional assessment from Dr. Shalts.

B.      Step Two

Plaintiff next contends that the ALJ erred by failing to designate his depression and post-traumatic stress disorder as severe at step two of the disability analysis. Because the Court has determined that the ALJ's rejection of the opinions of Drs. Barnett and Shalts was improper, it follows that the severity determination was not supported. Therefore, on remand, the ALJ should

analyze Plaintiff's depression and post-traumatic stress disorder based on the evidence relating to his mental impairments at step two of the sequential evaluation.

C.  Credibility

Plaintiff next contends that the ALJ erred in his determination of Plaintiff's credibility. The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834. Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of his impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas,* 278 F.3d at 958 . "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959.

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ discounted Plaintiff's assertions of depression made in November 2004 to Dr. Barnett. AR 16. The ALJ indicated that Plaintiff's primary complaint was dizziness and it was not until his consultative psychological examination in November 2004 that he complained of depression. AR 16. At that time, Plaintiff alleged that he had been depressed for two years, but the ALJ found no evidence in the medical record to corroborate Plaintiff's statements. AR 21. As noted, the ALJ improperly rejected subsequent evidence in the medical record that

15

corroborates Plaintiff's allegations of depression. Accordingly, the ALJ's rejection of Plaintiff's statements based on a lack of objective evidence is error.

The ALJ next discounted Plaintiff's credibility based on his report to Dr. Barnett that "people" suggested he apply for SSI. AR 21, 162. While the ALJ may use "ordinary techniques" in addressing credibility, there is no indication that such a suggestion implicates Plaintiff's veracity or reputation for truthfulness. *Light*, 119 F.3d at 792. However, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *See, e.g., Magallanes*, 881 F.2d at 750.

The ALJ also considered inconsistencies in Plaintiff's testimony, noting that Plaintiff's statements that he was unable to remember the number of children he has, that he needs help with personal care, that he does nothing but remain in the home and does not have any activities are not credible. AR 21. The ALJ indicated that Plaintiff was able to remember information and testify clearly under direct examination by his attorney, he reported to the doctor that he drove his children to school occasionally and he was seen in the emergency room with a fish hook in his finger indicating that he engaged in fishing on at least one occasion. AR 21, 186, 316. An ALJ may properly consider inconsistent testimony. *Thomas*, 278 F.3d at 958-59.

Insofar as the ALJ's decision may be suggesting that Plaintiff's daily activities undermine his credibility, the ALJ has failed to make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn,* 495 F.3d at 639.

Additionally, the ALJ considered Plaintiff's work history, identifying that Plaintiff had a very poor work history since arrival in the United States in 1993. AR 20. Plaintiff's work history was intermittent, with some jobs worked for only a few months. AR 87. An ALJ may properly consider work history in assessing credibility. *Thomas*, 278 F.3d at 959 (spotty work history negatively affects credibility). However, where a claimant tried to work for a short period of time and failed because of his impairment, such evidence does not support a finding that the claimant did not experience pain and limitations severe enough to preclude him from maintaining substantial gainful activity. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). There

is no indication that the ALJ considered whether Plaintiff's intermittent work history was due to his impairment(s).

Based on the above, the ALJ failed to make a credibility determination with findings sufficiently specific to support the conclusion that he did not arbitrarily discredit Plaintiff's testimony. *Thomas*, 278 F.3d at 958.

### D.     Lay Witness Testimony

Plaintiff further claims that the ALJ erred by failing to give reasons for rejecting the statements of his daughter-in-law, Eepang Seechan. Opening Brief, p. 14. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). If the ALJ "'wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.'" *Id.* (citation omitted).

This is not a situation in which the ALJ failed to consider lay witness testimony. Here, the ALJ considered Ms. Seechan's third-party questionnaire and indicated that it "corroborated claimant's testimony... that he was very depressed because of pain, dizziness and fainting." AR 18. The Commissioner contends that any error on the part of the ALJ to provide further analysis of the third-party questionnaire is harmless error. However, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout*, 454 F.3d at 1056. Here, the Court cannot so conclude. If fully credited, the questionnaire supports a conclusion regarding Plaintiff's mental impairments and implicates his ability to return to gainful employment.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter

17

judgment in favor of Plaintiff Saeng Seechan and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:** **February 13, 2009**              **/s/ Dennis L. Beck**
                                                         UNITED STATES MAGISTRATE JUDGE